FILED US District Court-UT
MAR 23 '22 PM03:23

ANDREA T. MARTINEZ, United States Attorney (9313)
STEPHEN P. DENT, Assistant United States Attorney (17405)
Attorneys for the United States of America
20 North Main Street, Suite 208
St. George, Utah 84770
Telephone: (435) 634-4262
stephen.dent@usdoj.gov

# SEALED

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> STEPHANIE NICOLE SUMMERS, <br><br> Defendant. | INDICTMENT <br><br> VIOLATIONS: <br><br> COUNTS 1-4: 18 U.S.C. § 1343 <br> (Wire Fraud) <br><br> COUNTS 5-6: 15 U.S.C. §§ 78j(b), 78ff, <br> and 17 C.F.R. § 240.10b-5 (Securities Fraud) <br><br> Case: 4:22-cr-00031 <br> Assigned To : Nuffer, David <br> Assign. Date : 3/23/2022 |

The Grand Jury charges:

## I. BACKGROUND

At all times relevant to the Indictment:

1. Defendant STEPHANIE NICOLE SUMMERS represented to victims that she managed and controlled Diversified Trade Company, LLC and Summers Companies, Inc., along with other entities.

2.  Summers Companies, Inc. was registered in Delaware. Diversified Trade Company LLC was registered in Mississippi. Both entities are associated with an address in Duluth, Georgia.

## II. THE SCHEME AND ARTIFICE TO DEFRAUD

3.  Beginning on a date unknown, and at least as far back as May 2016, and continuing to at least February 2022, in the District of Utah and elsewhere,

### STEPHANIE NICOLE SUMMERS,

defendant herein, devised and intended to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and omissions of material facts.

4.  In executing and attempting to execute the scheme and artifice to defraud, and in furtherance thereof, defendant Summers:

a.  willfully and knowingly, directly and indirectly, by the use of means and instruments of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (1) employing a device, scheme, and artifice to defraud; (2) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(3) engaging in acts, transactions, practices, and courses of business which would operate and did operate as a fraud and deceit upon other persons, in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5 (Securities Fraud); and

b.  knowingly transmitted and caused to be transmitted, wire communications in interstate commerce in violation of 18 U.S.C. § 1343 (Wire Fraud).

## II. OBJECT OF THE SCHEME AND ARTIFICE TO DEFRAUD

5.  It was the object of the scheme and artifice to defraud for Summers to fraudulently obtain money from victims through false statements, misrepresentations, deception, fraudulent conduct, and omissions of material facts, and thereafter cause the money to be diverted for Summers's personal use and benefit.

6.  Summers devised, and intended to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and omissions of material facts. In executing and furthering the scheme, Summers used email, interstate wire transmissions, and the facilities and means of interstate commerce.

## III. MANNER AND MEANS OF THE SCHEME AND ARTIFICE

7.  Summers used the following manner and means in execution and in furtherance of the scheme and artifice to defraud.

8.  She promised victims that she could help finance their business ventures. In exchange, she required victims to make their own investments in the projects. She

instructed victims to send money to bank accounts that she controlled. When victims sent Summers money, she spent the money on personal expenses, withdrew the money in cash, transferred it to other entities she controlled, and diverted it for other unrelated business expenses. She did not use the victims' money for the agreed-upon purposes.

9. In addition, Summers persuaded victims to invest in her companies by promising high returns, misrepresenting her credentials, and misrepresenting how she intended to use investors' money. Summers tried to give a false sense of security and obtain additional funds by telling investors that their investments were secure and gaining returns.

10. Below is an illustrative list of misrepresentations that Summers made to victims:

    a. She claimed that she was a successful international businesswoman and that she controlled over 20 entities in the United States, the Bahamas, Canada, Mexico, and Panama.

    b. She stated that she and her company, Summers Companies, Inc. successfully managed businesses in various industries, including real estate, hospitality, mining, oil and gas, technology, mortgage finance, construction, petroleum, aviation, food packaging and production, financial services, healthcare, and international trade.

    c. She claimed that she could help secure financing for victims' business ventures. On one occasion, she told victims that she could secure $47.5 million in financing for a water-park project in Toquerville, Utah. On another occasion, she told victims that she could secure $25 million in financing for

a technology startup. In both instances, she told the victims that they needed to make their own initial investments in the project. She instructed victims to send the funds to bank accounts that she controlled.

d.  She represented that she would use the victims' money on their business ventures. For example, she told victims in Utah that their funds would remain in escrow until all other financing was in place for the water-park project. She further represented that those funds would be used for the water-park project.

e.  She told victims that their investments were secure. She also told victims that their investments were earning returns. For example, she told a victim in New York that her investment gained a 20% return. Summers encouraged the victim to roll over her principal investment and purported return into another investment opportunity with Summers.

f.  She stated that she and her companies have assets worth hundreds of millions of dollars.

11. Below is an illustrative list of omissions:

a.  She did not tell victims that she used their money on personal expenses or that she transferred their money to other entities that she controlled. Nor did she tell victims that she failed to use their money for the agreed-upon purposes.

b.  She portrayed herself as an experienced and successful businesswoman by

touting her other purportedly successful business ventures. She did not tell victims that she used those touted business ventures to defraud other victims. For example, she told victims in Washington County that she helped develop a hotel in Panama City, Panama. She did not disclose that she used the Panama City project to defraud another victim.

c. She did not tell victims that she lacked cash and assets to finance their business ventures. Nor did she tell victims that a primary source of her income was from defrauding other victims.

## COUNTS 1-4
### 18 U.S.C. § 1343
### (Wire Fraud)

12. The allegations set forth above and all counts set forth in this Indictment are incorporated herein by reference and realleged as though fully set forth herein.

13. On or about the dates listed below, in the District of Utah and elsewhere,

### STEPHANIE NICOLE SUMMERS,

defendant herein, having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, promises, and omissions of material facts, for the purpose of executing said scheme and artifice to defraud, did cause to be transmitted by means of wire communication certain writings, signs and signals, that is, an interstate wire, in instances including but not limited to each count below:

6

| Count | Date (on or about) | Wire Transmission |
|-------|--------------------|-------------------|
| 1 | October 4, 2017 | A $230,000 wire from a State Bank of Southern Utah in the name of Desert Palm LLC (Utah) to a Suntrust account in the name of Diversified Trade Company (Georgia) |
| 2 | October 27, 2017 | A $165,000 wire from a State Bank of Southern Utah in the name of Desert Palm LLC (Utah) to a Suntrust account in the name of Diversified Trade Company (Georgia) |
| 3 | October 27, 2017 | A $7,000 wire from a State Bank of Southern Utah in the name of Desert Palm LLC (Utah) to a Suntrust account in the name of Diversified Trade Company (Georgia) |
| 4 | November 14, 2017 | A $125,000 wire from a State Bank of Southern Utah in the name of Desert Palm LLC (Utah) to a Suntrust account in the name of Diversified Trade Company (Georgia). |

All in violation of 18 U.S.C. § 1343.

## Counts 5-6
## 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5
## (Securities Fraud)

13.     The allegations set forth above and all counts set forth in this Indictment are incorporated herein by reference and realleged as though fully set forth herein.

14.     Beginning on a date unknown, and at least as far back as May 2016, and continuing to at least February 2022, in the District of Utah and elsewhere,

### STEPHANIE NICOLE SUMMERS,

defendant herein, willfully and knowingly, directly and indirectly, by the use of means and instruments of interstate commerce, and of the mails, and of the facilities of national securities exchanges, used and employed manipulative and deceptive devices and

7

contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (1) employing a device, scheme, and artifice to defraud; (2) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, transactions, practices, and courses of business which would operate and did operate as a fraud and deceit upon other persons, in instances including but not limited to each count below:

| Counts | Date (on or about) | Wire Transmission |
|--------|--------------------|-------------------|
| 5 | September 25, 2017 | Email from Summers to Utah victims stating that a $275,000 investment would give victims "the option to convert the note into 323,530 shares that will carry an aggregate value of $1,132,355 or $3.50 per share at conversion." |
| 6 | September 26, 2017 | Email from Summers to Utah victims explaining promissory notes to victims and stating in part that "the company plans to issue you preferred stock after the investments are made." |

All in violation of 15 U.S.C. §§ 78j(b), 78ff, and 17 C.F.R. § 240.10b-5.

## NOTICE OF INTENT TO SEEK FORFEITURE

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of

any offense in violation of 15 U.S.C. § 78ff and/or 18 U.S.C. § 1343, as set forth in this

Indictment, the defendant shall forfeit to the United States of America any property, real

or personal, which constitutes or is derived from proceeds traceable to the scheme to

defraud.  The property to be forfeited includes, but is not limited to, the following:

- A money judgment of approximately $979,150, which equals the value of any
  property not available for forfeiture as a result of any act or omission of the
  defendant for one or more of the reasons listed in 21 U.S.C. § 853(p).
- Substitute property as allowed by 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).

A TRUE BILL:

_____/s/_____

FOREPERSON OF THE GRAND JURY

ANDREA T. MARTINEZ
United States Attorney

_____

STEPHEN P. DENT
Assistant United States Attorney

9